# UNITED STATES BANKRUPTCY COURT

# WESTERN DISTRICT OF TENNESSEE

# WESTERN DIVISION

IN RE:

WILLIAM TAGG,                                      Case No. 21-23424-l

Subchapter V

Debtor.                                            Chapter 11

## DEBTOR WILLIAM TAGG'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt [or liquidating the assets] of William Tagg, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY A DATE THAT WILL BE ESTABLISHED BY THE COURT.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY COURT ESTABLISHED DEADLINE. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: TED I. JONES, 2670 UNION AVNEU EXTENDED, SUITE 1200, MEMPHIS, TENNESSEE, 38112.**

**-1-**

**A HEARING ON THE CONFIRMATION OF THE PLAN WILL BE SCHEDULED FOR A HEARING BY THE COURT AT AN ESTABLISHED DATE AND TIME.  THE COURT IS STILL FOLLOWING COVID-19 PROTOCALS AND IT IS ANTICIPATED THAT ALL INTERESTED PARTIES WILL BE ABLE TO PARTICIPATE FULL BY ZOOM CONFERENCE.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Respectfully Submitted,

/s/ Ted I. Jones

_____

TED I. JONES, #11017
2670  Union Avenue Extended
Suite 1200
Memphis, Tennessee  38112
901-568-2292, cell
901-525-4312, fax
901-526-4249, office
Dtedijones@aol.com

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The debtor receives Social Security Income at this time of $1,192.00 per month. In previous years he was a builder and he tried to build, develop, and sell condominium property in Florida. Because of market conditions he has been unable to sell a condominium that is owned by Charleston II Builders in order to not only pay all of the existing debt of that entity, but to also pay the debt for the condominium that is titled in his name. The two condominiums are located in the same building which is called "Tagganale." The condominium that is owned by this debtor Individually is as listed on the Schedules 8718 SR-Highway 30 #A Unit 3, Santa Rosa Beach FL 32459. The Debtor intends to pay 100% of all claims to all creditors and to pay all necessary administrative claims.

### ARTICLE 1
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.**    **Nature of the Debtor's Business.**

In times past the Debtor was a home builder and developer. The Debtor is currently semi-retired and receives Social Security income. His hope in this case to be allowed until December 31, 2022 to sell the property that is presently owned by Charleston Builders, II, a company in which he has some control and interest, and be allowed to retire and pay off fully his personal debts.

**1.2.**    **History of Business Operations of the Debtor**

The Debtor developed a resort property in Florida as disclosed on the petition as "Tagganale." It has units by floor that are luxurious and quite valuable. One unit is owned by the Debtor personally and another is owned by Charleston Builders, II. The unit that is owned by Charleston Builders, II the debtor intends to sell and has sufficient equity, in Debtor's opinion to retire and extinguish all debts of the Debtor. The Debtor owns 8% of Charleston Builders, II as disclosed

-4-

### 1.3    Filing of the Debtor's Chapter 11 Case.

The Debtor filed this case on October 18, 2021 to prevent a foreclosure on the unit in the condominium that was owned by him personally **8718 SR-Highway 30 #A Unit 3 Santa Rosa Beach, FL 32459.** Both the Debtor and Charleston, II builders have previously filed Bankruptcy cases as detailed below.

**11-28041** Charleston Builders II Inc.
**17-27389  William Tagg**
**20-20178  William Tagg**

### 1.4.    Legal Structure and Ownership.

The Debtor for purposes of this plan is a sole proprietorship.

### 1.5.    Debtor's Assets.

The Debtor listed on his schedules $5,077,300.00 in assets. All of those assets had the value determined by the Debtor himself.

| | |
|---|---|
| 8191 Dogwood Cove Avenue, Germantown | $815,000 |
| Unit 3, 8718 SR-Highway 30 | $4,200,000.00 |
| 2011 Audi A7 | $7,500 |
| Household Furnishings | $1,500 |
| Clothes, Personal Items | $300 |
| Furnishings for Rental Condo | $50,000 |
| (Held in Name of Charleston Builders, II) | |
| Checking Account | $3,000 |
| 8% Interest Charleston Builders, II | Unknown |

### 1.6.    Debtor's Liabilities.
The petition and schedules s amended listed no unsecured creditors.

The Debtor lists two secured creditors:
U.S Bank National Association, $3,000,000.00
Wells Fargo National Bank, NA, $1,000,000.00

The claims register has three (3) claims:

DeutscheBank        $1,769,278.86
(The debtor has filed an objection to this claim alleging that there is no personal liability on this loan)
Wells Fargo         $1,431,418.32
Pinnacle Credit Servicing, $717.99

### 1.7.    <u>Current and Historical Financial Conditions.</u>

The Debtor receives Social Security income of less than $1,200.00 per month.  Since the commencement of the case there has neither been an improvement or reduction in his financial abilities.

### 1.8.    <u>Events Leading to the Filing of the Bankruptcy Case.</u>

Debtor was facing a scheduled foreclosure on the unit in his name at Tagganale and filed this case to stop the foreclosure.

### 1.9.    <u>Significant Events During the Bankruptcy Case.</u>

The Debtor has an unresolved objection to the claim of DeutscheBank noted above.

### 1.10.    <u>Projected Recovery of Avoidable Transfers</u>

The Debtor is believed to have no voidable transfers in this case.

### ARTICLE 2

### <u>THE PLAN</u>

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**2.1**.    **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code.  For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

**Professional fees, as approved by the Bankruptcy Court**

These are believed to be $2,000 or under for Ted I. Jones attorney and are subject to review and approval by the court.

The Debtor believe that there will be no expenses arising in the ordinary course of business that will be due and unpaid and will be required to be paid in the Plan.

The Debtor believes that there will be no administrative tax claims.

The Debtor believes that there were no goods and services received within 20 days of the commencement of this case.

The debtor believes that there will be professional fees due to the case Trustee in an amount under $10,000.00.

The Debtor believes that there will be U.S. Trustee fees due to that program under $5,000.00.

> B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

**It is believed that there are no priority tax claims.**

**2.2    <u>Classes of Claims and Equity Interests.</u>**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

> A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as

secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

**U.S Bank National Association, $3,000,000.00**
**Wells Fargo National Bank, NA, $1,000,000.00**

U.S Bank National Association, $3,000,000.00
Wells Fargo National Bank, NA, $1,000,000.00

These claims will be paid 100% within 30 days of any closing on the Charleston II Builders condominium or no later than January 30, 2023.

B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

**There are believed to be no Unsecured Priority Claims in the case.**

C.  Class[es]of General Unsecured Claims

There is only one unsecured claim by **Pinnacle Creditor Service** in the amount of $717.99.  It will be paid 100% within 30 days of any closing on the Charleston II Builders condominium or no later than January 30, 2023.

### 2.3. __Estimated Number and Amount of Claims Objections.__

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

At present Claim Number 1 of Deutsche Bank has been objected to by the debtor and that objection has not been resolved.

### 2.4. __Treatment of Executory Contracts and Unexpired Leases.__

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

There are believed to be no executory contracts at issue in the case.

### 2.5. __Means for Implementation of the Plan.__

[Describe how the Plan will be implemented, including how the Plan will be funded. For example, if the Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures. Then insert the paragraphs set forth below, if applicable.]

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

### 2.6. __Payments.__

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors

under the Plan.

### 2.7.    **Post-Confirmation Management.**

There is not believed to be any post-confirmation management or expense involved in this case.

### 2.8.    **Tax Consequences of the Plan.**

***Creditors and/or Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: You may have a loss or claim that is uncollectible and may be discharged by these proceedings. Your ability to carry that as a loss depends on how you have reported the asset previously to the IRS.

### 2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

The Debtor will make no adequate protection payments in this case, or ongoing monthly payments in this case, but shall be allowed to sell a related ASSET OF Charleston Builders, II to pay the claims he has personally 100%.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    **Ability to Initially Fund Plan.**

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

### 3.2.    **Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

In this case the Debtor shall transfer proceeds from the sale of a condominium unit of Charleston Builders, II for the funding of most of the necessary payments under the Plan. Other than that, he will have to rely on his personal abilities to make any payments.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.

The Debtor asserts that in a liquidation it would be unlikely that the creditors would receive 100% of their claims and interests because the only way the debtor can remedy his personal debt is to close on the sale of the Charleston II Builders condominium unit to pay off these debts.

The Debtor owes more on his personal residence on Dogwood than the property is worth. The sale of that asset would generate no income to an estate. The debt with Wells Fargo which prompted the Chapter 13 filing has much accumulated debt due to interest and the fact that the creditor refused to accept installment payments heretofore. It has marginal equity.

## ARTICLE 5
## DISCHARGE.

**5.1.**

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

[
## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.   Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.   Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.   Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.    **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7.    **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 9
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which [DEBTOR] is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing**: The hearing will be scheduled by the court at a future time.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code

**9.30.    Petition Date**: [DATE], the date the chapter 11 petition for relief was filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee**:  Craig Geno, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.


Respectfully submitted,



By: ___/s/Ted I. Jones_____


Ted I. Jones, #11017
2670 Union Avenue Extended
Suite 1200
Memphis, Tennessee  38112
(901) 568-2292, cell
(901) 525-4312, fax
(901) 526-4249, office
Dtedijones@aol.com