IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| IN RE:<br><br>WILLIAM TAGG,<br><br>    Debtor. | Case No. 21-23424<br>Chapter 11 |

## OBJECTION TO CONFIRMATION OF PLAN

COMES NOW, U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-HY6 ("U.S. Bank"), and files this Objection to Confirmation of the Debtor's Chapter 11 Plan [Doc. 57], respectfully showing this Honorable Court as follows:

1. U.S. Bank is the holder of a claim secured by a mortgage loan on the Debtor's real property located at 8708 Highway 30A, #3, Seacrest Beach, Florida 32459 (the "Property"). *See* [Claim No. 4]. The claim is in the amount of $2,772,015.60, and has been in default since **November 2010**. *Id.* The arrearage is $407,598.37. *Id.*

2. The Debtor filed this case under subchapter V, but as detailed in U.S. Bank's Motion to Dismiss, the Debtor is clearly not eligible for subchapter V. *See* [Doc. 61].

3. The Debtor has no job, takes in just $1,192.00 per month in Social Security, and claims to own an 8% interest in an entity called Charleston Builders, II. *See* [Doc. 57] at p. 4. He claims to have "some control and interest" in the company, but no other details are provided. *Id.* at p. 3.

4. The Plan proposes to pay U.S. Bank $3,000,000.00 "within 30 days of any closing on the Charleston II Builders condominium no later than January 30, 2023." [Doc. 57] at p. 8. As to how the Debtor will implement the plan, he doesn't say. Instead, the Debtor failed to delete

1

the instructions from the template plan, and then proceeded to misrepresent that he has "sufficient funds on hand to make the payments required on the Effective Date" even though the payments are not supposed to be made until after a sale of the Charleston II Builders condominium. *See id.* at p. 9. In its entirety, the Plan says the following about means for implementation:

> 2.5. **Means for Implementation of the Plan.**
>
> [Describe how the Plan will be implemented, including how the Plan will be funded. For example, if the Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures. Then insert the paragraphs set forth below, if applicable.]
>
> On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

5. Regardless of whether the Debtor is proceeding under subchapter V or a standard chapter 11 case, the Plan is simply not confirmable. Under subchapter V, a proposed plan "shall include – (A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Plan here does not include a liquidation analysis or projection of the Debtor's ability to make payments. There is no information disclosed about the Charleston II Builders condominium, the status of any sale of that property, or how the sale could ever net the Debtor enough proceeds to pay U.S. Bank's claim. The Plan does not show what will happen if U.S. Bank's claim exceeds $3 million by the closing of the condominium sale. The Debtor also has no control over Charleston II Builders and it is not disclosed how an owner of only 8% of the company could have any real say in the disposition of its assets. Additionally, there are no

provisions in the Plan for what will happen if the sale of the condominium does not close by January 30, 2023, or if that sale does not generate enough proceeds to satisfy the secured claims. Moreover, it is utterly ridiculous to think that the sale of one condominium unit could net enough proceeds to satisfy the secured claims in this case. this condominium sale (of one unit, not a whole building) would need to net the entity almost **$52 million** in proceeds to pay the secured debt (assuming that the Debtor is entitled to 8% of the proceeds, which itself is unclear, and then not even taking into account the taxes that the Debtor would have to pay).[1] Clearly this is not going to happen. Thus, the Plan fails to provide any "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

6. If the Debtor is proceeding under standard chapter 11 rules, a plan must, *inter alia*, specify which claims are impaired and unimpaired, provide for similar treatment to similar classes of creditors, and provide adequate means for the plan's implementation. *See* 11 U.S.C. § 1129(a). Here, the Plan does not indicate whether any creditors are impaired and, as noted above, provides no adequate means for the plan's implantation.

7. In either situation, a plan cannot be confirmed unless it complies with 11 U.S.C. § 1129(a). *See* 11 U.S.C. § 1129; 11 U.S.C. § 1191(a). This requires, *inter alia*, that "[t]he plan complies with the applicable provisions of this title" and that "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a). As detailed above, the Plan does not, in any way, "comply with the applicable provisions of this title." It is also not proposed in good faith.

> Although the Sixth Circuit has not defined good faith in the Chapter 11 plan confirmation context, it has done so in the context of analyzing a

---

[1] Moreover, it appears that the condominium unit owned by Charleston Builders II may be subject to a mortgage (provided it is the same unit secured by the mortgage in Claim No. 1) in the amount of $1,769,278.86.

3

debtor's good faith in proposing a Chapter 13 plan, holding that courts must, based on the totality of the circumstances, determine whether the plan satisfies the purposes underlying Chapter 13:

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. *The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13:* a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.
>
> ... [C]ourts should take into account the totality of the circumstances confronting a debtor ... when deciding whether or not to confirm a Chapter 13 plan.

*In re Trenton Ridge Invs., LLC*, 461 B.R. 440, 468–69 (Bankr. S.D. Ohio 2011) (quoting *Metro Emps. Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1033–34 (6th Cir. 1988)) (emphasis added).

8. With respect to determining whether a plan "satisfies the purposes undergirding Chapter [11]," the "[t]wo primary purposes or chapter 11 relief are the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims." *Id.* (quoting *Fields Station LLC v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner)*, 490 F.3d 21, 25 (1st Cir. 2007) (citations omitted).

9. Here, there is no indication that the Plan was proposed in good faith. The Debtor has almost zero income, is retired and does not operate, own, or control any businesses, and has one miniscule unsecured claim for an overdue cell phone bill. In fact, the Debtor could have long ago paid the unsecured claim of $717.99 without filing for bankruptcy since he paid $1,738.00 just to file his petition. The Debtor is simply abusing the bankruptcy system to avoid a foreclosure sale, and chapter 11 will not help to preserve a business as a going concern (there is not one to preserve) and will not maximize recoverable assets to pay unsecured claims because

4

the Debtor has enough assets to pay the claim right now. *See* [Doc. 51] at p. 10 (showing $3,463.42 on hand). Quite simply, no form of bankruptcy relief could help the Debtor. He has no income to support payments on the secured claims and the arrearages in a chapter 13 case and there are no unsecured claims that could benefit from a chapter 7 liquidation. The present case is bankruptcy abuse, pure and simple. Confirmation of the Plan should be denied.

WHEREFORE, U.S. Bank respectfully requests that this Court inquire into the matters raised herein and deny confirmation of the Plan.

Respectfully submitted, this 28th day of January, 2022.

*/s/ Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)
**RUBIN LUBLIN TN, PLLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
(678) 281-2730 (Telephone)
(470) 508-9203 (Facsimile)
bchaness@rlselaw.com

*Attorney for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-HY6*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28th, 2022, I filed the within and foregoing by CM/ECF, which will serve notice on the trustee, debtor in possession (through his counsel), and all others receiving electronic notice in this case. In addition, I caused a copy of the within and foregoing to be served via U.S. First Class Mail on the following on January 27, 2022:

William Tagg
8191 Dogwood Road
Germantown, TN 38139

Ted I. Jones
Jones & Garrett Law Firm
2670 Union Avenue Ext.
Suite 1200
Memphis, TN 38104

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157

Jamaal M. Walker
Office of the United States Trustee
200 Jefferson Avenue, Suite 400
Memphis, TN 38103

                                      */s/ Bret J. Chaness*
                                      BRET J. CHANESS (BPR # 31643)